**9 P.(2d) 685**

## CUELLAR v. AMERICAN EMPLOYERS' INS. CO. OF BOSTON, MASS.

### No. 3592.

Supreme Court of New Mexico.

March 16, 1932.

Rehearing Denied April 14, 1932.

H. B. Hamilton, of El Paso, Tex., and Gilbert & Hamilton, of Santa Fé, for appellant.

J. L. Lawson, of Alamogordo, for appellee.

BICKLEY, C. J.

This is an appeal by the insurer from a judgment in favor of a dependent widow, in a proceeding under the Workman's Compensation Act (Comp. St. 1929, § 156-101 et seq.). The deceased was in the employ of the state highway department, which, by Laws 1927, c. 100, was authorized to take out insurance securing for its employees the benefits of the act.

The highway department was constructing a road. The deceased was employed as a pick and shovel man with a grading crew. Foreman Maxwell was in charge of the crew, employing and discharging the men. Quarters were furnished for the employees, which the deceased ordinarily occupied. But, living near by, he was accustomed to spend Sundays with his family.

A mile and a half or more from where the grading crew was working, another crew, in charge of Foreman Cady, was constructing a bridge, a part of the same road project, and one continuous series of work near mouth of cañon from La Luz to Highrolls; both

foremen employing explosives for blasting; blasting was employed in the immediate vicinity where Cuellar worked, under Foreman Maxwell. We attach no significance to the fact that there was more than one foreman on the job. The highway department was the employer, and deceased was an employee thereof.

On the day in question, the deceased obtained permission from his foreman to quit work an hour earlier than usual, it being Saturday, so that he could leave for his Sunday visit. He proceeded on foot along a railroad track, the nearest, and a reasonable, though not the only, route to his destination, in the area which was then being used by the state highway department in constructing a road, through La Luz Cañon containing both the railroad and the highway under construction, apparently in close proximity and parallel. Approaching the scene of operations of the bridge crew, he was killed by being struck by a rock thrown into the air by a blast set off by Foreman Cady.

The judgment is on the theory that the proximate cause of death was negligence of Cady, attributable to the highway department, the employer. Appellant challenges the conclusion of negligence, but we do not question its correctness.

It is contended by appellant that the fatal injury was not one "arising out of and in the course of" the employment of the deceased within the meaning of the act. Laws 1917, c. 83, as amended. This requires consideration of section 12 (*l*) of that chapter. It appears

unchanged in Laws 1929, c. 113, § 12 (*l*) (1929 Comp. St. § 156-112 (*l*). Its text is as follows: "The words 'injuries sustained in extra-hazardous occupations or pursuits,' as used in this act shall include death resulting from injury, and injuries to workmen, as a result of their employment and while at work in or about the premises occupied, used or controlled by the employer, and injuries occurring elsewhere while at work in any place where their employer's business requires their presence and subjects them to extra-hazardous duties incident to the business, *but shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the approximate cause of which injury is not the employer's negligence.*"

Defending her judgment, appellee takes the position that this subsection, by clear inference, means that if the employer's negligence is the proximate cause of the injury, it shall be deemed to have arisen out of and in the course of the employment, though the workman had left his duties. She enjoys in argument such advantage as is to be had from the fact that the subsection, standing alone, not only is susceptible of such construction, but seems to mean that very thing.

Appellant points out that, if such be the meaning, the provision is far-reaching, greatly extends the operation of the act, and is a departure from the underlying principles and true theory of workmen's compensation. Illustrating the point, it suggests that it would afford compensation to a workman who had left his duties, was on his way home, and was

injured by being negligently struck by the employer's automobile, driven by a chauffeur, conveying the employer's wife to keep a social engagement.

Appellee says the case assumed would not come within the subsection, because, to be compensable, "the injury would have to arise out of a negligent act of the employer in the line of his work in an extra-hazardous occupation."

But appellee's proposed limitation may not go far enough to satisfy the demand for reasonable construction. It does not confine the operation of the provision within the reasonable and generally accepted purposes of workmen's compensation. According to the language, neither lapse of time nor circumstance stops operation of the provision, after the workman shall have left his duties.

Both parties agree that there is necessity for judicial construction. Appellee contends that the injury is compensable if due to negligence of the employer in the conduct of his business as a whole, the appellant insisting that compensation is allowable only in case the negligence is in connection with that part of the business in respect to which the workman has duties, and that "injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties" means "while still 'in or about the premises' of his employment * * * even tho he had ceased work for the day and started home."

Both parties agree that few states have a similar statutory provision, and that none, so far as their research has gone, has construed it.

Our section 12 very closely follows section 6 of the original Wyoming act of 1915, c. 124; there being but a slight difference in subsection (*l*). The italicized portion of our subsection is quite similar to a provision of the Kansas act, first appearing in Laws 1913, c. 216, § 4, amendatory of section 9 of the original act. L. 1911, c. 218. However, we have found no decision in either state interpreting it.

This subsection purports to refer to a phrase "as used in" the act, viz., "injuries sustained in extra-hazardous occupations or pursuit." We do not find this exact expression to have been used. It appears in section 2 of the Wyoming Act cited supra, and its substance and effect is contained in section 2 of our act. (156-102, 1929 Comp. St.)

Without mention of the peculiar fact just pointed out, both counsel have assumed that section 12 (*l*) has reference to the question, sometimes troublesome, of whether the particular injury was sustained in or arose out of or in the course of the employment.

Another peculiarity of section 12 (*l*) is this: The idea of negligence as an essential to recovery is generally foreign to the theory of workmen's compensation. Merrill v. Peñasco Lumber Co., 27 N. M. 632, 204 P. 72. Economic and humanitarian considerations have brought about a system which generally places the right to compensation on other grounds. Merrill v. Peñasco Lumber Co., supra; Gonzales v. Chino Copper Co., 29 N. M.

228, 222 P. 903; Hughey v. Ware, 34 N. M. 29, 276 P. 27. Yet, discovering this provision, it seems that under certain circumstances, whatever they may be, negligence will still be the basis of recovery.

This injection of negligence, or reversion to it, is not by a direct statement. It is provided in substance that injuries to a workman "while on his way to assume the duties of his employment or after leaving such duties" shall not be deemed to have been "sustained in" the course of the employment, unless negligence of the employer was the proximate cause. From this it is to be inferred that if, after the workman has left his duties, the employer's negligence, as the proximate cause, is responsible for an injury to him, he shall have compensation. But it is a matter of construction, and its far-reaching and illogical consequences raise doubt that the intent was as broad as the language.

The necessity for judicial construction being conceded, we approach the task in the light of the provisions of Workmen's Compensation Acts in which the peculiar expression of our statute do not appear, and we keep in mind the fact that the Workmen's Compensation Act is remedial and should be liberally construed, but not unreasonably or contrary to legislative intent.

Our act makes it clear that only injuries "arising out of and in the course of" employment are compensable. That is the important and oft-repeated essential to compensation. The statute should receive a construction involving the least departure from that fundamental principle.

As a general rule, no compensation is recoverable by an employee who is on his way to or from work, but there are exceptions to the rule. Among the exceptions recognized are where, in going to and from work, the means of transportation is provided by the employer, or the time consumed is paid for or is included in the wages; where the way used is the sole and exclusive way of ingress and egress, or where the way of ingress and egress is constructed by the employer or even where the way used is not the sole and exclusive way, but is the most convenient one, or the one usually used and is acquiesced in either expressly or inferentially by the employer or as stated by the Alabama court in Ex parte Louisville & N. R. Co., 208 Ala. 216, 94 So. 289, is not a *prohibited* way.

Injuries while walking along a way while going to or from work have been held to have arisen out of and in the course of the employment even though the injury occurred on private premises, belonging to one other than the employer.

"It has been further held that the period of going to and returning from work is not limited by the exact time when the workman reaches the scene of his labor and begins it, or when he ceases it, but includes a reasonable time, space, and opportunity, before and after, while he is at or near his place of employment. One of the tests sometimes employed is, Was the workman still on the premises of his employer? But this is not always a true test." Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 159, 13 A. L. R. 524.

The Wisconsin Legislature dealt with the situation by enacting a statute (St. Wis. 1927, § 102.03(2) containing the following provision: "Every employee going to and from an employment in the ordinary and usual way, while on the premises of his employer, shall be deemed to be performing service growing out of and incidental to his employment." See Hallett Construction Co. v. Industrial Commission of Wisconsin, 201 Wis. 182, 229 N. W. 547.

We think our Legislature must be presumed to have known both the rule and the exceptions thereto.

In the aggregate of industrial accidents resulting in injuries, there are many which result from negligence traceable to the employer and many which occur from negligence of strangers and many which may not be attributable to negligence at all. Ordinarily under the exceptions to the rule, the workman injured "while on his way to assume the duties of his employment or after leaving such duties" might recover compensation:

(a) Where the proximate cause of the injury *was not* the employer's negligence.

(b) Where the proximate cause of the injury *was* the employer's negligence.

We are impressed with the thought that the legislative language is designed to *exclude* injuries theretofore compensable and falling within the above-suggested classification (a), and leaving as compensable those embraced within classification (b). Under this view, the factors of time, place, and circumstance must still be employed to determine whether a workman injured "while on his way to assume the duties of his employment or after leaving such duties" was within the rule denying the status of the workman as being in the course of his employment or within the exceptions to that rule. If under the facts of a case, guided by reason and authority, we find such injured workman to be within the exceptions, then, in order for him to recover, he must establish the additional fact of the employer's negligence in order not to be excluded from the provisions of the act.

We think the factors of time, place, and circumstance as they are employed to determine whether a workman injured while going to or from work is within the rule that he is not in the course of his employment, are sufficient in the case at bar to bring deceased within the exceptions to the rule and therefore was in the course of his employment at the time of the injury.

He was in close proximity to or "about" the premises occupied, used, and controlled by his employer.

The stretch of road being built or improved by the highway department and upon which the deceased was employed, having been presently appropriated and occupied for the purpose of prosecuting the work, could properly be considered as "premises occupied, used or controlled by the employer." See Hallett Construction Co. v. Industrial Commission, supra.

Mr. Cady, the foreman who set off the blast, a witness for appellant, testified that the deceased was walking along the only reasonable

and sensible way to his destination and that he (Cady) would have used the same way in the situation of the deceased. The court found that the place of injury was "in the area which was then being used by the State Highway Department in constructing a road." The fact that deceased was only seventy-five to one hundred steps from the place where the blast was set off and near the place to which Cady's men retreated as a place of supposed safety, and that Cady instructed his men to stop everybody coming up or down the cañon, shows that the place of the injury was "about" the premises. It is stated in '28 R. C. L., Workmen's Compensation Acts, par. 9: "A subject of considerable controversy has been the phrase 'on or in or about,' as employed in the statute for the purpose of describing the locus of a factory, mine, railroad, or other industrial enterprise. The words 'on' and 'in' are not difficult or ambiguous, but the word 'about' adds an element which has caused a considerable difference of opinion. It certainly enlarges the application of the act, and it has been spoken of as an 'elastic word.' The phrase as a whole involves some idea of physical proximity, and has reference to an area. The limitation of the area is the point at issue in practically all of the cases in which the question has arisen."

Doubtless each case will have to be determined upon its own facts. We do not now attempt a comprehensive formula interpretative of the statute.

It is our view that the injury in the case at bar was so connected with the employment of the deceased in point of time, space, and circumstance that although he was not at work and had left his duties, and the negligence of his employer being the proximate cause of the injury, the judgment of the trial court is correct and should be affirmed and the cause remanded, and it is so ordered.

SADLER, J., concurs.

PARKER and HUDSPETH, JJ., did not participate.

WATSON, J. (concurring in result).

The controlling statute, after interpretation, reads as follows: "The words 'arising out of and in the course of the employment' as used in this act * * * shall not include injuries to any workman occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

It is plain that when the injury occurs after the workman has left his duties, negligence of the employer, proximately causing it, is made an essential element of compensability. Is it the sole element; or is it additional to the usual requirement that the injury shall have arisen out of and in the course of the employment? My brethren hold the latter view. I hold the former.

My view is derived from the statutory provision quoted. The converse of that provision is that the words "arising out of and in the course of the employment" shall include injuries occurring to a workman on his way to assume or after leaving his duties,

the proximate cause of which injury is the employer's negligence.

If this was intended, negligence has been made the sole criterion in this class of cases, and we cannot deny compensation because we cannot say, logically, and according to the course of decision, that the injury arose out of and in the course of the employment. By the statute, in this class of cases, the injury is *deemed* to have arisen out of and in the course of employment *if* proximately caused by the employer's negligence.

My brethren admit that this meaning is that which naturally suggests itself. They go so far as to say that "the subsection, standing alone, not only is susceptible of such construction, but seems to mean that very thing." They shrink from adopting it, however, because of its claimed far-reaching effects, as illustrated by appellant's supposititious case, and because of the anomaly of finding negligence injected into a compensation statute.

I think there has been exaggeration of the far-reaching results of this natural interpretation. In my judgment, appellee has correctly suggested that the "negligence" contemplated by this provision must have occurred in the conduct of the employer's business. If the injury occur when neither the workman nor the employer is in the course, the one of the employment or the other of the business, they would be so plainly strangers to each other on the occasion and with respect to the injury that it would be carrying literalism to the point of absurdity so to interpret the statute as to deprive the employer of the common-law defenses to negligence, or as to limit the workman in his recovery to sums which may be awarded under the statute.

Nor does it follow that "neither lapse of time nor circumstance stops operation of the provision, after the workman shall have left his duties." The word "after" may include all subsequent time, and even eternity; but, obviously, it does not. I venture to say that no court would hold that it could survive the termination of the contract of employment. Manifestly, the statute contempates that the situation "after leaving his duties" shall be interrupted each day. It cannot survive the recurrence of the situation "while on his way to assume the duties of his employment." Whether the one must each day necessarily merge into the other, or whether the first may be otherwise interrupted, are questions we may well leave for decision as the facts of particular cases come before us. I see in this case no reason to suppose that the deceased, being on his way from the place of his employment to his home, was not in the situation governed by the provision.

It is true, generally, that negligence has no place in compensation statutes. But my brethren have not succeeded in removing the anomaly. And I am not impressed that their view is more consistent with the general principles of compensation. It is no more incongruous, as I see it, to say that a workman injured, after leaving his duties, by the employer's negligence, shall be compensated, regardless of whether the injury arose out of and in the course of the employment, than

to say that if it did arise out of and in the course of the employment, he shall not be compensated unless he can also show the employer's negligence as the proximate cause.

Under the theory of my brethren, the beneficiaries of the act and the courts are left to struggle with the question, so long and often troublesome, whether, under given circumstances, a workman, on his way to assume the duties of his employment, or after leaving such duties, is in the course of employment, and whether the injury then occurring arose out of it. It merely adds a new complication and imposes a new burden upon the workman.

It may well be supposed that the Legislature, in the interest of easy comprehension and certainty of decision, desired to avoid the hairsplitting which had long attended the decision of this troublesome question. The situation of the workman on his way to and from his duties had long been a no man's land. If an injury there occurred, it was exceedingly difficult for the interested parties to ascertain their legal rights. The Legislature, in adopting a public policy for this state, chose the quite reasonable, if anomalous, expedient of protecting the workman in the no man's land against the employer's negligence, and against it alone.

So, if there could be any justification, I find no advantage in rejecting the reasonably plain meaning of the statute.

On this question of interpretation, it might be proper that I yield to the well-considered and strongly held views of my brethren. In doing so, however, I should be constrained to disagree with them in the decision of this case. I have found no reason or authority upon which to conclude that the injury in question did logically, or according to sound decisions, arise out of and in the course of the employment. The injury so arose merely because, having been caused by negligence, the statute deems it to have so arisen. As well illustrating my views I cite Hallett Construction Co. v. Industrial Commission of Wisconsin, 201 Wis. 182, 229 N. W. 547; Hills v. Blair, 182 Mich. 20, 148 N. W. 243; Erickson v. St. Paul City Railway Company, 141 Minn. 166, 169 N. W. 532.

Under my theory of the statute, the judgment should be affirmed. Since that is the only ground upon which I can concur in that result, I have felt called upon to set forth my views at such length.